J-S19011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BROWN | : | |
| | : | |
| Appellant | : | No. 1228 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 4, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009516-2008

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:            **FILED SEPTEMBER 08, 2022**

Frank Brown returns to this Court with an appeal from the Philadelphia County Court of Common Pleas' judgment of sentence entered after this Court remanded the matter for resentencing because the sentencing court had created the appearance of personal bias against Brown. On remand, Brown filed a motion to recuse, which the sentencing court denied. The sentencing court proceeded to resentence Brown to an aggregate term of six to 14 years' incarceration, including two to four years' incarceration for carrying a firearm without a license in violation of Section 6106 of the Uniform Firearms Act, 18 Pa.C.S.A. § 6106 ("firearms not to be carried without a license").

---

[*] Former Justice specially assigned to the Superior Court.

We agree with Brown, in the first instance, that this sentence represented an abuse of the sentencing court's discretion, as the court erroneously believed the sentence it gave for the firearms not to be carried without a license charge was within the sentencing guidelines. In fact, this sentence deviated from the guidelines and the court offered no contemporaneous reasons for a deviation it did not believe it had made. We are therefore compelled to vacate the sentence and once again remand for resentencing. As we also agree with Brown that the sentencing court also abused its discretion by not granting Brown's recusal motion, we instruct the President Judge of the Philadelphia Court of Common Pleas to assign the resentencing we are now remanding for to a new sentencing court.

Brown was originally sentenced to an aggregate term of seven to 14 years' incarceration with 20 years' probation after he was convicted of multiple offenses, including robbery and firearms not to be carried without a license, stemming from the robbery of a ninety-one-year-old woman and her daughter-in-law. Brown eventually filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, and the matter was reassigned to a different trial judge due to the retirement of the judge who had originally sentenced Brown. The reassigned trial court denied Brown's PCRA petition. This Court, however, vacated Brown's judgment of sentence, which included a mandatory minimum, after concluding it was illegal pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013). *See Commonwealth v.*

**Brown**, 193 A.3d 1054, No. 1524 EDA 2017 (Pa. Super. filed June 7, 2018) (unpublished memorandum) ("**Brown II**").

We remanded for resentencing, and the matter was assigned to the same trial court which had denied Brown's PCRA petition ("sentencing court"). The sentencing court ordered a presentence investigation ("PSI") report and a mental health evaluation, and it scheduled a resentencing hearing for August 29, 2018. At the hearing, the sentencing court recounted in great detail that Brown had incurred a slew of misconducts while he had been in prison, and those misconducts demonstrated to the court that Brown had not been rehabilitated. It also interpreted Brown's allocution as disparaging to the court. The court proceeded to resentence Brown to 12 to 35 years' incarceration, followed by 15 years of reporting probation. Brown "did not respond with an abundance of equanimity to [the significant] increase" in his sentence, and reacted by yelling at, and threatening, the sheriff. **Commonwealth v. Brown**, No. 3234 EDA 2018, 2020 WL 4558808, at \*\*5 (Pa. Super. filed August 7, 2020) (unpublished memorandum) ("**Brown III**").

After witnessing this behavior, the sentencing court *sua sponte* and immediately reconsidered Brown's sentence. The court described Brown's behavior as threatening and disrespectful, and resentenced Brown to 19 to 59 years' incarceration, followed by 15 years of probation. Less than a month later, the trial court once again *sua sponte* resentenced Brown "to correct a minor discrepancy," this time resentencing Brown to an aggregate term of 14

to 40 years' incarceration, with a probationary tail of 15 years. ***Brown III***, 2020 WL 4558808, at \*\*7.

Brown filed a motion for reconsideration of his sentence. At the hearing on the motion, the sentencing court once again referenced Brown's prison misconducts, his disrespect for the court, and his threatening behavior towards the sheriff. It also acknowledged the mitigating circumstances Brown had presented. The court then resentenced Brown for a fourth time, giving him a sentence of 12 to 35 years' incarceration with no probationary tail.

Brown appealed to this Court, arguing his sentence was excessive and had been the product of vindictiveness. A panel of this Court agreed, and once again remanded for resentencing. In doing so, the panel found that the sentencing court had improperly relied on Brown's prison misconducts as a basis for increasing his sentence. ***See id.*** at \*\*13. The panel also noted the sentencing court had increased Brown's sentence after improperly interpreting Brown's allocution as being disparaging to the court, and then turned around and "*sua sponte* increased the sentence further immediately after feeling disparaged by [his] reaction to the first sentence." ***Id.*** The panel concluded with the following summary:

> The record of the multiple sentencing hearings in this case is extraordinary. In addition to the errors of law [made at those hearings], the record is rife with personal interactions, perceived slights, and *sua sponte* reconsiderations of sentence that, at the very least, created the appearance of personal bias. Accordingly, we are compelled to hold that [Brown's] sentence is the product of an abuse of the trial court's considerable, but not unfettered, discretion.

*Id.* at \*\*15. The panel then dropped the following footnote:

> This Court lacks the authority to order *sua sponte* that [Brown's] resentencing be conducted by a different jurist. **See Commonwealth v. Lucky**, [229] A.3d [657]   [ ] (Pa. Super. February 13, 2020) (citing **Commonwealth v. Whitmore**, 912 A.2d 827 (Pa. 2006) (providing that recusal must first be sought and ruled upon by the trial court)). However, [Brown] may file a motion to recuse on remand.

*Id.* at \*\* 15 n. 11.

Brown did so, but the sentencing court denied his motion to recuse. The court therefore proceeded to the resentencing of Brown. In doing so, the court stated that, although it disagreed with this Court's August 2020 memorandum, it would nonetheless decline to "utilize the considerations that [this Court] deemed unacceptable" when resentencing Brown. N.T. Sentencing, 1/4/21, at 15; *see also id.* at 16-17 (stating it would not consider Brown's lack of progress in prison even though it disagreed with this Court that it was not a proper consideration). The court also stated that it "certainly [did not] want [Brown] to think that his sentence was increased because of something other than what it should be." *Id.* at 17.

The court informed the parties it would be using the sentencing guidelines delineated by the defense. *See id.* at 14-15. Those guidelines included a standard sentencing range of six months to 14 months, plus or minus six months for the aggravated and mitigated ranges, for the firearms not to be carried without a license charge. *See id*. The court then listed various recommendations for Brown's sentence, and resentenced Brown to an

aggregate term of six to 14 years' incarceration, to be followed by five years of probation. This sentence included two to four years' incarceration for the firearms not to be carried without a license conviction. The court did not list the reasons for its sentence on the record.

Brown filed a timely notice of appeal, which is now before this Court. He raises two issues: one challenging the court's sentence for the firearms not to be carried without a license conviction, and a second issue challenging the court's denial of his recusal motion.

Brown first argues the sentencing court abused its discretion by deviating from the guidelines when sentencing him on the firearms not to be carried without a license charge and doing so without providing its reasons for the deviation. Both the Commonwealth and Brown agree that the sentencing guidelines' standard range for Brown's firearms not to be carried without a license conviction was six to 14 months, plus or minus six months for the aggravated and mitigated ranges. The Commonwealth and Brown also both acknowledge that the court sentenced Brown to two to four years, and further agree that Brown's sentence was outside the sentencing guidelines' aggravated range by four months. Curiously, the trial court repeatedly stated in its Pa.R.A.P. 1925(a) opinion that it did not deviate from the guidelines when sentencing Brown on the firearms not to be carried without a license charge:

> [N]ot only did this court not deviate from the guideline ranges in setting [Brown's] sentence, at the outset, the court accepted the

defense version of the guideline range and acknowledged that the applicable guideline range for firearms not to be carried without a license has an offense gravity score of 7 resulting in a guideline range of 6 [months] to 14 [months], plus or minus 6 [months] (N.T., 01/04/2021, 14).

Trial Court Opinion, 9/14/21, at 15.

The sentencing court acknowledged it could have, in its discretion, sentenced Brown outside the guidelines as "long as the court also state[d] of record the factual basis and specific reasons which compelled [the court] to deviate from the guideline range." *Id.* (citations omitted). The court then summarily concluded that Brown had not shown his sentence was unreasonable, and therefore, the court had not abused its discretion by sentencing Brown to two to four years' incarceration for the firearms not to be carried without a license conviction.

Brown argues the sentencing court erred in reaching this conclusion and that, contrary to what the court found, the court did abuse its discretion in sentencing Brown to two to four years' incarceration for the firearms not to be carried without a license charge. We agree.

When an appellant raises a claim challenging the discretionary aspects of his sentence, as Brown does here, this Court will only review the claim if the appellant shows he filed a timely notice of appeal, properly preserved his claims at sentencing or in a post-sentence motion, included a statement pursuant to Pa.R.A.P. 2119(f) in his brief and raised a substantial question that his sentence is not appropriate under the Sentencing Code. *See*

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (outlining these requirements and defining a substantial question as one where the appellant advances a colorable argument that the sentencing court's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process).

Brown has met all of these requirements here. He filed a timely appeal, preserved his claim in a post-sentence motion and included a Rule 2119(f) statement in his brief. Moreover, his claim that the sentencing court improperly sentenced him outside the guidelines without providing the reasons for its deviation presents a substantial question under the Sentencing Code. ***See Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa. Super. 2009).

We therefore turn to the merits of Brown's claim challenging the discretionary aspects of his sentence. This Court's review of the discretionary aspects of a sentence is governed by Sections 9781(c) and (d) of the Sentencing Code. ***See*** 42 Pa.C.S.A. § 9781(c), (d). Section 9781(c) provides three instances where this Court must vacate a sentence and remand: (1) where the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously; (2) where the sentence falls within the guidelines but is clearly unreasonable based on the circumstances of the case; and (3) where the sentence falls outside the sentencing guidelines and is unreasonable. ***See*** 42 Pa.C.S.A. § 9781(c). The Sentencing Code also

specifies that when the sentencing court imposes a sentence that is outside the sentencing guidelines, it must provide a contemporaneous statement of the reason or reasons for the deviation from the guidelines. ***See*** 42 Pa.C.S.A. § 9721(b).

Here, although the sentencing court insisted it had sentenced Brown within the guidelines, the math shows otherwise. Both parties and the court agree that the sentencing guidelines' standard range used for Brown's firearms not to be carried without a license charge was six months to 14 months, with the aggravated range calculated by adding six months.[1] As such, to be within the aggravated range of the guidelines, Brown's minimum sentence had to be no more than 20 months. However, the court imposed a minimum sentence of 24 months. The court therefore applied the guidelines erroneously, and we are compelled to vacate the sentence pursuant to Section 9781(c)(1). ***See Brown III***, 2020 WL 4558808, at \*\*14 (stating that pursuant to 42 Pa.C.S.A. § 9781(c)(1) "if the trial court believed it was

_____

[1] Our own research confirms the parties' analysis of the sentencing guidelines. At the instant resentencing hearing, the parties agreed that the offense gravity score for the firearms not to be carried with a license conviction would be 7, due to a consensus that the Commonwealth did not have evidence the gun was loaded. ***See*** N.T., 1/4/21, at 14. Further, the parties agreed Brown's prior record score for this conviction would be zero. ***See id***., at 11, 15. Under these circumstances, the applicable sentencing guidelines called for a minimum sentence between six and 14 months, with the aggravated range extending to 20 months. ***See*** 204 Pa.Code § 303.16, 6th Edition, Revised (12/05/2008).

sentencing Appellant within the guidelines but actually applied them erroneously, we would be required to vacate the sentence for that reason alone").

We add that, because the court did not believe it had sentenced Brown outside the guidelines, it offered no contemporaneous reasons explaining why it had deviated from the guidelines.[2] Given all of these circumstances, we must vacate Brown's judgment of sentence and once again remand for him to be resentenced. **See Commonwealth v. Byrd,** 657 A.2d 961, 963-964 (Pa.

_____

[2] The Commonwealth appears to contend that the sentencing court provided reasons on the record for the deviation from the sentencing guidelines because it stated it had reviewed the PSI report. In the first place, the sentencing court did not indicate it was referencing the PSI report or its contents as the source of its reasons for deviating from the guidelines. Nor would that make sense for the sentencing court to do. The court's opinion makes clear that it believed it was sentencing Brown inside the guidelines and, by extension, that it did not need to provide reasons for a deviation the court did not believe it had made.

The Commonwealth cites **Commonwealth v. Antidormi,** 84 A.3d 736 (Pa. Super. 2014), and **Commonwealth v. Bullock**, 170 A.3d 1109 (Pa. Super. 2017), to support its apparent argument that a court's indication that it had reviewed a PSI report satisfies its duty to provide a contemporaneous on-the-record or written statement of its specific reasons for deviating from the guidelines entirely. The Commonwealth's reliance on these two cases is misplaced. First, neither **Antidormi** nor **Bullock** addressed the situation presented by this case, *i.e.*, where the sentencing court erroneously applied the guidelines so that it mistakenly believed that the sentence it imposed did not depart from the aggravated range of the guidelines. In fact, **Antidormi** involved a challenge to a sentence that the **Antidormi** Court described as merely outside the standard range of the sentencing guidelines. **See Antidormi**, 84 A.3d at 760-761. Moreover, neither sentencing court in either of these two cases limited its reasons for its sentence solely to a general reference to the PSI report. As such, we are unpersuaded by the Commonwealth's argument in this regard.

- 10 -

Super. 1995) (vacating the judgment of sentence when the sentencing court provided reasons on the record to support what it believed was a sentence in the aggravated range, while actually sentencing the defendant outside of the guidelines and doing so without providing a contemporaneous statement of its reasons for the deviation).

The question then becomes whether the sentencing court should be the court tasked with resentencing Brown, or whether, as Brown argues, the sentencing court should have granted Brown's motion to recuse. In support of his argument, Brown points out that this Court, in the August 2020 memorandum, already made the determination that the sentencing court's statements and actions in relation to Brown had, at a minimum, given the appearance that the court was personally biased against Brown. Given this, Brown argues the court should have granted his motion for recusal. We agree with Brown that, under the circumstances in which the motion for recusal was filed, the sentencing court abused its discretion by denying that motion.

Generally, a motion for recusal is properly directed to and decided by, in the first instance, the jurist whose participation is being challenged. **See Commonwealth v. Watson**, 228 A.3d 928, 939 (Pa. Super. 2020). "Where a jurist rules that he … can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion." **Id.** (citation omitted) (ellipsis in original).

When a party requests recusal, it is their burden to produce evidence establishing bias or prejudice, which raises a substantial doubt as to the ability of the jurist to preside impartially. ***See id.*** However:

> [t]he inquiry is not whether a judge was in fact biased against the party moving for recusal, but whether even if actual bias or prejudice is lacking, the conduct or statement of the court raises an appearance of impropriety. The rule is simply that disqualification of a judge is mandated whenever a significant minority of the lay community could reasonably question the court's impartiality.

***Id.*** (citation omitted).

This is especially true in the context of criminal sentencing, given the tremendous discretion a judge has when imposing a sentence on a particular defendant. ***See Commonwealth v. Rhodes***, 990 A.2d 732, 748 (Pa. Super. 2009). As our Supreme Court has stated:

> The largely unfettered sentencing discretion afforded a judge is better exercised by one without [a] hint of animosity toward [the defendant] … [A] defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned.

***Commonwealth v. Darush,*** 459 A.2d 727, 732 (Pa. 1983).

Here, it is hard to overlook the fact that this Court's August 2020 memorandum found that the actions and statements of the sentencing court, at the very least, created an appearance of impartiality, and then remanded for resentencing on that very basis. Although we lacked the authority to order that the resentencing be assigned to a different court, we reminded Brown of his ability to file a motion for recusal of the sentencing court on remand.

Brown did file such a motion, which the court denied even in the face of this Court's explicit finding that the sentencing court's actions had raised an appearance that it was biased against Brown. The court supported this denial in its 1925(a) opinion on the basis that it had assured Brown that it would not consider his prison misconducts when resentencing him and that the court was confident it had the ability to sentence him impartially. **See** Trial Court Opinion, 9/14/21, at 10. Although the court did not expand on how it had assured Brown (or others) of its ability to be impartial moving forward, the only remark of record at resentencing that seemed to relate to this alleged assurance is the court's statement that it "certainly [did not] want [Brown] to think that his sentence was increased because of something other than what it should be." N.T., 1/4/21, at 17. Even so, the question of whether the court itself believes it can be impartial does not end the inquiry. Instead, in the context of criminal sentencing, the "standard requires that the judge recuse himself not only when he doubts his own ability to preside impartially, but whenever he believes his impartiality can be reasonably questioned." **Rhodes**, 990 A.2d at 748 (citations omitted).

The court also misconstrued the standard guiding its recusal decision when it summarily concluded that it had properly denied the recusal motion because Brown had "failed to establish his sentence would have been different if a different judge had imposed it having heard the same evidence and testimony at the time of sentencing." Trial Court Opinion, 9/14/21, at 11.

Brown, however, did not need to show actual prejudice. Instead, "our Supreme Court has recognized that even upon confirmation that a sentencing judge did not give effect to his personal bias, the extraordinary discretion he is empowered to exercise may compel his removal from the case if his impartiality can be reasonably questioned." **Rhodes**, 990 A.2d at 749 (citation omitted).

This same principle also negates the Commonwealth's argument that the fact that the court imposed a sentence upon remand that was more lenient than the original sentence demonstrates that the court was not biased against Brown. Again, "[t]here is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant" recusal. **Id. at** 748 (citations omitted).

The cases make clear that a sentencing court should remove itself from sentencing a defendant once the appearance of impartiality has surfaced, or, in other words, once the court's impartiality can reasonably be questioned. This Court has already determined that the sentencing court's actions here gave rise, at the very least, to the appearance of impartiality. **See Brown**, 2020 WL 4558808, at **12 (invalidating proceedings "based upon [the sentencing court's] improper appearance of partiality and ill will"). As such, the court should have recused itself from resentencing Brown and abused its discretion by failing to do so.

The Commonwealth contends, however, that despite this previous finding, Brown must show there was evidence of bias at this resentencing hearing from which he now appeals. We do not agree with the Commonwealth that, under the circumstances here, we can completely divorce Brown's latest resentencing hearing from the series of resentencing hearings giving rise to evidence of the court's bias against Brown. This Court has found that recusal may be based on the cumulative effect of a judge's remarks and conduct, rather than any single discrete incident. **See Rhodes**, 990 A.2d at 748-749. Similarly, we have also looked to other cases involving other defendants sentenced by the same sentencing court to determine whether the sentencing court should have recused itself from the case at hand. **See Commonwealth v. Bernal**, 200 A.3d 995, 1002 (Pa. Super. 2018). Given these cases, we conclude that it is entirely appropriate to rely on this Court's previous determination that the sentencing court exhibited an appearance of bias against Brown in its previous resentencings of Brown when deciding that the sentencing court abused its discretion by refusing to recuse itself from resentencing Brown for the fifth time. **See Rhodes**, 990 A.2d at 748 (stating that "a tribunal is either fair or unfair") (citation omitted).

To be clear, Brown does not argue, and therefore we do not hold, that the aggregate sentence or the sentences other than for the firearms not to be carried without a license were unreasonable in any aspect. In fact, even with regard to the firearms not to be carried without a license sentence, we do not

reach Brown's contention that his sentence was excessive. Rather, we merely conclude the record reflects that the sentencing court was not aware that it had imposed a sentence outside the guidelines. That mistake, combined with this Court's prior conclusion that an appearance of impropriety existed with this sentencing judge sentencing Brown, requires us to vacate the entire sentence and remand for resentencing before a new sentencing judge.

Judgment of sentence vacated. Case remanded for resentencing before a new sentencing judge. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/8/2022*